UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS GESUALDI and FRANK FINKEL,
Trustees of Local 282 International Brotherhood
of Teamsters Welfare, Pension, Annuity, Job
Training and Vacation Sick Leave Trust Funds,

                Plaintiffs,　　　　　　　REPORT AND
　　　　　　　　　　　　　　　　　　　　　　　RECOMMENDATION

   -against-　　　　　　　　　　　　　　　　　09 CV 2058 (JG)(RML)

METRO FOUNDATION CONTRACTORS
INC.,
                Defendant.
-----------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,
ANTHONY PIROZZI, DOMINICK MARROCCO,
ANTHONY D'AQUILA, FRANK FINKEL,
JOSEPH FERRARA, MARC HERBST,
THOMAS PIALI and DENISE RICHARDSON,
as Trustees and Fiduciaries of the Local 282
Welfare, Pension, Annuity, Job Training, and
Vacation and Sick Leave Trust Funds,

                Plaintiffs,

   -against-　　　　　　　　　　　　　　　　　09 CV 5660 (JG)(RML)

METRO FOUNDATION CONTRACTORS
INC.,
                Defendant.
-----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiffs in these two related actions move for sanctions and for an order of contempt against defendant Metro Foundation Contractors Inc. ("defendant" or "Metro"). On December 22, 2010, plaintiffs originally moved for contempt in 09 CV 2058, and on January 11, 2011, the Honorable John Gleeson, United States District Judge, referred the motion and all

related matters to me. (Order, dated Jan. 13, 2011.) Following joint conferencing of the two actions and unsuccessful attempts by the court to resolve discovery disputes, I set a new briefing schedule for contempt or sanctions motions in both actions. Briefing was completed on July 1, 2011. For the reasons stated below, I respectfully recommend that plaintiffs' motions be granted in part and denied in part.

## BACKGROUND AND FACTS

A. <u>09 CV 2058</u>

On May 14, 2009, plaintiffs Thomas Gesualdi and Frank Finkel ("plaintiffs" or the "Trustees"), Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds (the "Funds"), commenced 09 CV 2058. The Funds are multi-employer benefit trusts, organized and operated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, <u>et</u> <u>seq.</u> (Complaint in 09 CV 2058, dated May 14, 2009, ¶ 2.) In the action, plaintiffs alleged that defendant violated ERISA by failing to contribute to the Funds, as required by a collective bargaining agreement, for the periods of April 2008, May 2008, and September 2008 through March 2009. (<u>Id.</u> ¶ 9.) They sought $37,431.13 in benefit contributions and delinquency charges (<u>id.</u>), as well as interest from May 5, 2009 (<u>id.</u> ¶ 18) and any additional amounts that would become due during the course of the action (<u>id.</u> ¶ 21).

As Metro had not yet appeared in the action, on June 10, 2009, plaintiffs filed a motion for default judgment in the amount of $52,287.25, plus costs and disbursements totaling $435.00 and an injunction requiring defendant to submit required contribution reports and payments. (Motion for Default Judgment in 09 CV 2058, dated June 10, 2009 ("09 CV 2058

-2-

Default Mot.").)[1] On June 11, 2009, Judge Gleeson granted plaintiffs' motion. (Order in 09 CV 2058, dated June 11, 2009.) Anthony Lazzaro ("Lazzaro"), Metro's principal, then wrote to both Judge Gleeson and to plaintiffs' counsel, requesting an extension of time to answer, (see Letter in 09 CV 2058, dated June 12, 2009, from Anthony Lazzaro (Dkt. Entry #7)), and in a subsequent letter, requested that the court vacate the default judgment against defendant (see Letter in 09 CV 2058, dated June 19, 2009, from Anthony Lazzaro (Dkt. Entry #9)).

Despite Lazzaro's (and Metro's) purported desire to vacate the default judgment and defend the case, defendant delayed in taking the actual steps necessary to do so. For example, despite the court's issuance of numerous orders directing defendant to obtain counsel because it could not proceed pro se, it took over seven months to do so.[2] Moreover, after I began holding conferences in the case, defendant repeatedly (and without prior justification) failed to

---

[1] Plaintiffs derived the sum of $52,287.25 by adding ten percent to the number of hours for the month (May 2008) in which the largest number of hours were reported in the previous twelve reports submitted by defendant. (See Affirmation of Avram H. Schreiber, annexed to 09 CV 2058 Default Mot., dated June 10, 2009, ¶¶ 19, 20.) The Trust Agreement between the Union and employers provides that in the event that the employer has failed to submit "required reports and/or pertinent books for audit within twenty (20) days after written demand, the Trustees, or their agents, may compute the sum due for any month" using that figure. (09 CV 2058 Default Mot., Ex. C Art. IX, § 1(e).)

[2] On July 29, 2009, I advised Lazzaro that he could not represent Metro and gave him until August 31, 2009 to retain an attorney. (See Minute Entry in 09 CV 2058, dated July 29, 2009.) However, that deadline passed without any attorney appearing on defendant's behalf. Once again, on September 22, 2010, I reiterated, and Lazzaro acknowledged, his continuing obligation to obtain counsel for Metro. (See Minute Entry in 09 CV 2058, dated Sept. 22, 2010.) By order on consent following the conference, defendant and Lazzaro received a final extension until November 5, 2010 to obtain an attorney. (See id.) Only on January 26, 2010 did Sean T. Wright, Esq., appear on defendant's behalf.

appear for scheduled conferences.[3] Defendant also failed appear for a scheduled deposition and produce books and records, despite the court's two orders that it do so.[4]

B. 09 CV 5660

Meanwhile, on December 28, 2009, plaintiffs[5] commenced 09 CV 5660 against Metro. As in 09 CV 2058, plaintiffs alleged ERISA violations. They sought to compel defendant to produce its books and records for an audit and collect any delinquent contributions shown to be owed. (Complaint in 09 CV 5660, dated Dec. 28, 2009, ¶ 1.) Because defendant had not yet appeared, on October 22, 2010, the Honorable Raymond J. Dearie, United States

---

[3] Defendant failed to appear for a scheduled telephone conference on August 10, 2010. (See Order in 09 CV 2058, dated Aug. 11, 2010.) Lazzaro later claimed that he did not receive notice of the conference (see Letter, dated Aug. 25, 2010 (Dkt. Entry #20)), but plaintiff filed an affidavit of service indicating service of the court's scheduling order upon defendant (Affidavit of Service in 09 CV 2058, sworn to July 27, 2010 (Dkt. Entry #16)). Again, despite service by both the court and plaintiff (see Affidavit of Service in 09 CV 2058, sworn to Dec. 6, 2010 (Dkt. Entry #24)) of the order scheduling a conference for December 16, 2010, defendant did not appear or request an adjournment. (See Minute Entry in 09 CV 2058, dated Dec. 16, 2010.) Moreover, when the court attempted to reach Lazzaro by telephone and offered him the opportunity to appear by phone, he disconnected the call. (See id.)

[4] On June 10, 2010, I granted plaintiffs' unopposed motion to compel defendant to comply with a subpoena duces tecum requiring it to appear for a deposition and produce certain books and records. (Order in in 09 CV 2058, dated June 10, 2010.) At a conference on September 22, 2010, I directed Lazzaro to appear for the deposition by December 10, 2010. (See Minute Entry in 09 CV 2058, dated Dec. 10, 2010.) Despite this directive from the court, Lazzaro failed to appear for the deposition. (See Minute Entry in 09 CV 2058, dated Dec. 16, 2010.)

[5] Nominal plaintiffs in 09 CV 5660 also include Fund Trustees Louis Bisignano, Anthony Pirozzi, Dominick Marrocco, Anthony D'Aquila, Joseph Ferrara, Marc Herbst, Thomas Piali, and Denise Richardson. Because judgments in either case will go to the Funds, I will use "plaintiffs" interchangeably in both cases to denote the Trustees despite the additional nominal plaintiffs in 09 CV 5660.

District Judge,[6] granted plaintiffs' motion for a default judgment to the extent that plaintiffs requested an order to Metro to present its books and records for an audit of the period of March 6, 2008 to the present. (Order in 09 CV 5660, dated Oct. 22, 2010.)

### C. Joint Conferencing and Consent Order

On January 26, 2011, Sean T. Wright, Esq., appeared in both cases on behalf of defendant.[7] On February 4, 2011, Lazzaro and Wright attended a conference in 09 CV 2058. At that conference, Wright stated that it would be difficult if not impossible for defendant to settle that case without the involvement of plaintiffs' counsel in 09 CV 5660 because the two actions involved the same parties and transactions. (See Transcript,[8] dated Feb. 4, 2011 ("Feb. 4 Tr."), at 7–8.) He thus suggested that a way to facilitate settlement would be to do an audit in both cases. (See id. at 10.) After the court conferenced in plaintiffs' counsel in 09 CV 5660, all the parties agreed that the next step would be for Metro to allow an audit of its books and records within thirty days, so that counsel could then evaluate the audit results and attempt to reach a settlement in both cases. (See Minute Entry in 09 CV 2058, dated Feb. 4, 2011; Minute Entry in 09 CV 5660, dated Feb. 4, 2011.)

Despite the fact that conducting the audit had been Metro's suggestion, Metro failed to comply with the consent order to produce its books and records within thirty days, and

---

[6] On January 3, 2011, 09 CV 5660 was reassigned to Judge Gleeson for all further proceedings. (Order in 09 CV 5660, dated Jan. 3, 2011.)

[7] Although Wright did not formally file a notice of appearance in 09 CV 5660 until May 30, 2010, it is undisputed that he represented defendant in both actions beginning with his appearance before the court on January 26, 2011.

[8] Where, as here, there is no reference to one case or the other, the court's citation applies to an identical document filed in both cases.

failed to move for a timely extension. By letter dated March 21, 2011, well after the expiration of the thirty-day deadline, and in response to plaintiffs' requests for sanctions, defendant asserted that it could only produce its books and records through its accountant, who would be unavailable until after April 15, 2011. (Letter Motion to Vacate and Dismiss in 09 CV 2058, dated Mar. 21, 2011, at 1.) At a subsequent hearing on April 6, 2011, Metro requested and was granted until April 29, 2011 to comply with the consent order but was advised that there would be no further extensions. (See Minute Entry, dated Apr. 6, 2011.) Nonetheless, Metro failed to produce its books and records by April 29, 2011.

Finally, on May 6, 2011, I ordered defendant to show cause as to why sanctions, including a possible finding of contempt, should not be imposed for its failure to comply with court orders to make its books and records available for inspection and to enter an appearance of counsel.[9] (See Minute Entry, dated May 6, 2011.) However, the court noted that sanctions could be avoided if the books and records were produced by noon on May 12, 2011. (Id.) Metro again failed to comply. In fact, during the May 12, 2011 show cause hearing, Lazzaro stated unequivocally that Metro would not provide its books and records to plaintiffs' auditors for inspection in either case. (See Transcript, dated May 12, 2011, at 23–24.) As a result, I directed plaintiffs' counsel to proceed with their motions for sanctions and/or contempt.

Presently, plaintiffs move for a finding of contempt against Metro and for the

---

[9] As explained above in Note 7, Wright did not formally file a notice of appearance in 09 CV 5660 until May 30, 2010.

imposition of a fine of either $500 or $1000[10] per day to the Clerk of the Court for each day that defendant fails to produce the requested books and records. (See Proposed Order, annexed as an exhibit to Motion to Compel in 09 CV 2058, dated Dec. 22, 2010 ("09 CV 2058 Mot."); First Motion for Sanctions in 09 CV 5660, dated June 7, 2011 ("09 CV 5660 Mot."), at 2.) In addition, in 09 CV 5660, plaintiffs move for: (1) a preclusion order preventing Metro from presenting evidence as to damages; and (2) payment of plaintiffs' attorney's fees related to Metro's disobedience of the February 4, 2011 consent order. (09 CV 5660 Mot. at 2.)

## DISCUSSION

"A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981). Fed. R. Civ. P. 37 sets forth the procedure for enforcing discovery and sanctioning misconduct. When a party frustrates the discovery process as set out in Rule 37, thereby preventing disclosure of necessary facts, severe sanctions are appropriate. See Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976) (severe sanctions are necessary both as a penalty and a deterrent); Penthouse Int'l., 663 F.2d at 386 (severe sanctions in response to abusive litigation practices should be applied diligently as both a penalty and a deterrent).

In this case, there is no question that defendant has frustrated the discovery process set out in Rule 37. It has missed conferences, delayed finding counsel, failed to attend a scheduled deposition, and most important, failed to produce its books and records (despite

---

[10] Plaintiffs request $500 per day in 09 CV 2058, and $1000 per day in 09 CV 5660.

several orders and its own suggestion, through counsel, that an audit would be the best way to settle both actions). Nonetheless, defendant argues that neither a motion to compel nor sanctions are appropriate for two reasons, both arising from the fact that these two related actions are proceeding simultaneously. First, defendant contends that orders entered in the two actions, which it deems "duplicative," "are contradictory and confusing." (Defendant's Memorandum in Opposition, dated June 24, 2011 ("Def.'s Mem."), at 5.) Its contention appears to be that it is ambiguous whether certain orders apply in one action, the other, or both. Second, Metro, through Lazzaro, claims that it did not agree to schedule an audit until after the court had considered its argument that plaintiffs should not be permitted to maintain both actions simultaneously. (See Affidavit of Anthony Lazzaro, sworn to June 30, 2011, ¶ 9 ("[I]t was not my understanding that I agreed to schedule an audit before the issue of whether Plaintiff would be allowed to maintain both actions simultaneously was decided.").)

Defendant's arguments are wholly unpersuasive. First, while Judge Dearie's October 2010 order for defendant to produce its books and records for an audit unquestionably applies only in 09 CV 2058, the record is perfectly clear that the court's subsequent orders to produce Metro's books and records for an audit, most notably the consent order, apply in both cases. In fact, as explained above, it was Metro's counsel who suggested that an audit be done to facilitate a global settlement. (See Feb. 4 Tr. at 10.) Moreover, as plaintiffs note, Metro's actions, including asking for extensions of time in which to produce the books and records because of the purported unavailability of its accountant, "clearly indicated that it understood the Orders." (Reply in 09 CV 5660, dated June 29, 2011, at 2.) Second, because Metro agreed to produce its books and records without qualification and within a short time-period, Lazzaro's

-8-

"understanding" of the order defies both logic and the record.

In short, there is no question that Metro's prolonged, repeated, and unexcused failure to produce its books and records to plaintiffs for examination warrants sanctions.[11]

"Rule 37(b) affords the court 'broad discretion in fashioning an appropriate sanction.'" Linde v. Arab Bank, PLC, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 101 (2d Cir. 2002)). The range of sanctions available to the Court includes—but is not limited to—

> orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting a default judgment against the disobedient party; or entering an order of contempt.

Id. at 195 (citing Residential Funding, 306 F.3d at 101; Fed. R. Civ. P. 37(b)). Sanctions should be tailored to the offensive conduct. Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) ("Rule 37 permits the imposition of 'just' sanctions; the severity of the sanction must be commensurate with the non-compliance."). Rule 37(b) also provides that "instead of or in addition to" other sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In 09 CV 5660, where damages remain undetermined, plaintiffs request a

---

[11] While this failure alone warrants sanctions, it bears noting that defendant has engaged in numerous other sanctionable offenses, as detailed above.

preclusion order preventing defendant from presenting evidence as to damages. (09 CV 5660 Mot. at 2.) While preclusion of evidence "should be imposed only in rare situations," Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988), "[s]uch a severe sanction is justified 'when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable.'" Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991)). Here, the record clearly establishes that Metro has willfully failed to comply with numerous court orders, beginning with Judge Dearie's October 2010 order that it produce its books and records for inspection. Moreover, it is plain that Metro should not be able to rely on documents that are responsive to orders with which it refused to comply. Therefore, an order precluding defendant from presenting evidence as to damages is appropriately tailored to defendant's offensive conduct, and I respectfully recommend that plaintiffs' motion in 09 CV 5660 for this sanction be granted.

      In addition, plaintiffs in 09 CV 5660 request payment of plaintiffs' attorney's fees stemming from defendant's disobedience of the multiple orders directing it to submit its books and records for inspection. As Metro's conduct was in no way justified, let alone substantially justified, I recommend that the court grant plaintiffs' motion for attorney's fees for all work related to this motion and its enforcement of it be granted and that the same sanction be imposed in 09 CV 2058. As plaintiffs have neither submitted contemporaneous time records nor stated the number of hours or the hourly rate for which they seek compensation, I also recommend that plaintiffs' counsel be directed to submit detailed fee applications

      Plaintiffs also move an order of contempt in both cases requiring Metro to pay a

-10-

sum to the Clerk of the Court for each day that it refuses to comply with this Court's orders. Because the lesser sanctions described above are available to the court under Rule 37, the court believes it is unnecessary at this time to issue the "potent weapon," Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76 (1967), that is a civil contempt order. See, e.g., Metro Foundation Contractors, Inc. v. Arch Ins. Co., No. 09 CV 6796, 2011 WL 2150466, at *7 (S.D.N.Y. May 31, 2011) ("Contempt should only be used when necessary and the Court does not find that it is necessary yet to begin the contempt process." (citing Patterson, Belknap, Webb & Tyler, LLP v. Regia Mgmt. Corp., 97 CV 2624, 1998 WL 788798, at *1 (S.D.N.Y. Nov. 10, 1998))). Therefore, I recommend that plaintiffs' motions for contempt be denied at this time. However, any subsequent failure by Metro to comply with the court's orders will result in a recommendation that Metro, and Lazarro personally, as its corporate officer, be held in contempt of court.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motions for sanctions be granted in part and that Metro be precluded from offering evidence in 09 CV 5660. I also recommend that Metro be required to pay attorney's fees in both cases related to bringing these motions and the subsequent enforcement of them, and that plaintiffs' counsel be directed to submit detailed fee applications. However, I recommend that plaintiffs' motions be denied at this time to the extent that they seek to hold Metro in contempt of court. Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to

Judge Gleeson and to my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

                                                         Respectfully submitted,

                                                         /s/
                                                   ROBERT M. LEVY
                                                 United States Magistrate Judge

Dated:  Brooklyn, New York
          Sept 7, 2011